UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN S.,[1]<br><br>    Plaintiff<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]<br><br>    Defendant. | Case No. 5:20-cv-01940-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.   PROCEDURAL HISTORY

Plaintiff Ellen S. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the undersigned United States Magistrate Judge and filed briefs

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party in this case.

[2] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See https://www.ssa.gov/history/commissioners.html*. She is therefore substituted as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

addressing the disputed issues in this case. [Dkt. 16 ("Pltf's. Br."), Dkt. 20 ("Def. Br.").] The Court has taken the parties' briefing under submission without oral argument. For the reasons set forth below, the Court affirms the decision of the ALJ and orders that judgment be entered accordingly.

## II.  ADMINISTRATIVE DECISION UNDER REVIEW

On March 31, 2017, Plaintiff filed an application for DIB alleging disability beginning August 11, 2014. [Dkt. 14, Administrative Record ("AR") 201-210.] In her application, Plaintiff stated that she became disabled and unable to work due to a combination of physical and mental impairments. Plaintiff's application was denied at the initial level of review and on reconsideration. [AR 121-128.] On November 15, 2019, a hearing was held before Administrative Law Judge Deborah Van Vleck ("the ALJ"). [AR 36-83.] On December 6, 2019, the ALJ issued an unfavorable decision. [AR 15-30.]

The ALJ applied the five-step sequential evaluation process to find Plaintiff not disabled. *See* 20 C.F.R. § 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [AR 18.] At step two, the ALJ found that Plaintiff suffered from the severe impairments including obesity, status post gastric bypass and lap band procedures, aggravating degenerative disc disease of the cervical and lumbar spine, bilateral carpal tunnel syndrome, and bilateral arthritis of the hands with bilateral trigger thumbs; epilepsy, controlled with medication. [AR 18.] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix I of the Regulations, ("the Listings"). [AR 23]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work (20 C.F.R. § 404.1567(a)), except that she could engage in:

no more than occasional pushing or pulling with the bilateral upper and lower extremities. The claimant could [sic] no more than occasionally engage in bilateral overhead reaching, but could frequently reach in other directions, frequently handle, and frequently finger, bilaterally. The claimant could frequently climb ramps or stairs, but could never climb ladders, ropes, or scaffolds. The claimant could frequently balance, stoop, kneel, or crouch, but could only occasionally crawl. The claimant could never work in the presence of unprotected heights or hazardous machinery, and could not operate a motor vehicle as part of her job duties.

[AR 23.] At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a Case Manager, as that job is generally and actually performed (AR 29) and that she could perform other work in the national economy. [AR 29.]

The Appeals Council denied review of the ALJ's decision on July 21, 2020. [AR 1-4.] This action followed.

### III.   GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if

the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

At issue is whether the ALJ articulated legally sufficient reasons for rejecting the subjective symptom testimony of Plaintiff and her spouse. [Pltf's. Br. at 5-19.]

**1.    The ALJ Provided Adequate Reason to Reject Plaintiff's Subjective Testimony**

Plaintiff first asserts that the ALJ failed to state sufficient reasons for discounting her credibility. [Pltf.'s Br. at 5-17.] The Court disagrees.

### A.    Plaintiff's Testimony

At the hearing on November 25, 2019, Plaintiff testified that she was 61 at the time of the hearing and in the process of a divorce. [AR 44.] She stated that she was five-foot four inches tall and she had recently lost a significant amount of weight due to a gastric bypass surgery and related complication which prevented her from eating solid foods. [AR 45-48.]

When asked about her former employment, Plaintiff testified that she received her nursing degree in 1983. [AR 50.] Plaintiff most recently worked as a nurse case manager for a health insurance company. However, she resigned from that company in 2014 after a dispute over the company's business practices. [AR 59.] Plaintiff testified that it would be difficult for her to return to her past work as a case manager due to "spinal stenosis in her neck" and she would have problems with keyboarding and documentation because she has to "wear braces on both of her hands" due to her carpal tunnel syndrome. [AR 62-63.] Plaintiff also explained that she was recently diagnosed with spinal stenosis in her lower back. Plaintiff testified that she learned of her diagnosis shortly before attending ComicCon in San Diego with her daughter in 2018. [AR 65.]

When asked about her experience attending ComicCon, Plaintiff testified she attended for four days in July. She had a rough time in the beginning after she tripped over her daughter's suitcase at night, but the trip eventually improved. [AR 66.] She only attended the convention on Thursday and Sunday because she was unable to procure tickets on the more popular Friday and Saturday dates. [AR 66-67.]

With respect to her other impairments, Plaintiff also suffers from arthritis in her joints, in addition to high blood pressure, anxiety, depression, and neuropathy in her feet. [AR 71.] As treatment for her impairments, Plaintiff gets injections in her right hand and injections in her back. However, she has not had carpal tunnel release surgery. [AR 63, 76.] Plaintiff also takes medications for anxiety and depression and sees a licensed marriage and family therapist. [AR 72.]

When asked about her daily activities, Plaintiff testified that she drives around 30 miles a week. [AR 76.] She does some chores around the house as well as handles the grocery shopping and meal preparation. [AR 75-76.] She goes out to eat with friends and she has attended ComicCon every year since 2014. [AR 77.] On a weekly basis she goes to the movie theater with her daughter, however sometimes she has difficulty sitting through the entire film. [AR 77.] Plaintiff also takes care of her mother who suffers from dementia on several days during the week. [AR 45, 78.] In doing so, she prepares meals and she helps her mother dress and bathe. [AR 78.] On the days that she does not help her mother, Plaintiff rests. [AR 77-78.]

**B.     Legal Standard**

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies the first step and there is no evidence of

malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if she makes specific findings that include clear and convincing reasons for doing so. *Id.* at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F. Supp. 2d 1078, 1086 (N.D. Cal. 2001) (internal citations and quotation marks omitted) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p, 1996 SSR LEXIS 4.

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning symptoms, other testimony by the plaintiff that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, plaintiff's daily activities, the plaintiff's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce her alleged symptoms. [AR 24.] Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing.

**C.    The ALJ's Decision Sets Forth Several Clear and Convincing Reason for Rejecting Plaintiff's Credibility**

Here, the ALJ gave several reasons to reject Plaintiff's credibility including: (1) Plaintiff's symptoms were adequately controlled with generally conservative treatment; (2) Plaintiff's regular participation in a wide-range of activities was inconsistent with disabling limitations; (3) Plaintiff admittedly resigned from work due to work conflict and not disabling symptoms; and (4) inconsistencies between

6

the objective medical evidence and Plaintiff's allegations of disabling limitations undermined her credibility.

First, the ALJ found that Plaintiff's daily activities were inconsistent with her allegations of disabling symptoms lasting in excess of 12 months. [AR 27.] The ALJ's conclusion here is supported by substantial evidence. Plaintiff's daily activities bear on her credibility if the level of activity is inconsistent with her claimed limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Thus, an ALJ may rely on a Plaintiff's daily activities to support an adverse credibility determination only when those activities either "contradict [the plaintiff's] other testimony," or "meet the threshold for transferable work skills"; *i.e.*, where she "is able to spend a substantial part of . . . her day performing household chores or other activities that are transferable to a work setting." *Orn*, 495 F.3d at 639. However, a claimant need not be "utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Id.*; *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

Here, Plaintiff testified that she was independent in her activities of daily living. [AR 27.] She drove about 30 miles per week, did grocery shopping, prepared meals for her family, and did some household chores around the house. [AR 76.] In addition to these daily activities, Plaintiff also travelled to San Diego for Comic-Con every year since August 2014, watched movies at the theatre every week, and she went to see shows at casinos. [AR 27, 77]. While Plaintiff added that there were times when she had difficulty sitting through the entire movie, she nonetheless was able to sit through them. [AR 77.] Moreover, the ALJ noted that

Plaintiff took turns taking of her mother who has dementia on average every other day. [AR 27, 78.] On days that she took care of her mother, Plaintiff prepared meals and helped her mother dress and bathe. [AR 78.]

The ALJ found that these activities "pointed to a lesser degree of limitation than [Plaintiff] otherwise alleged." [AR 27.] This rationale was a clear and convincing ground to find Plaintiff less than fully credible as the ALJ reasonably concluded that Plaintiff's activities were inconsistent with the presence of an incapacitating or debilitating condition. *See, e.g., Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); *Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (evidence that claimant's self-reported activities suggested a higher degree of functionality than reflected in subjective symptom testimony adequately supported adverse credibility determination). Accordingly, the ALJ properly determined that, to the extent Plaintiff alleged that she experienced disabling symptoms, her wide range of self-reported activities rendered her allegations less than fully credible.

Second, the ALJ noted evidence that Plaintiff stopped working for reasons "due to personal disagreements with the business practices of her prior employer rather than due to any particular diagnosis or episode of symptom exacerbation." [AR 27.] Indeed, Plaintiff testified at the hearing that she resigned from her health insurance job on the onset date because she did not want to pressure Medicare/Medi-Cal recipients into inferior healthcare plans. [AR 59.] An ALJ may properly discount a claimant's subjective symptom allegations on these grounds. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (holding that an ALJ properly discounted a claimant's credibility after finding that he stopped working not because of disability, but because he had been laid off); *Drouin v. Sullivan*, 966 F.2d 1255, 1256, 1258 (9th Cir. 1992) (ALJ did not err in rejecting credibility partly on the basis that claimant was laid off for business reasons, not impairments). The

record supports the ALJ's characterization that Plaintiff's initial cessation of work raises questions as to whether her alleged inability to work is related to her impairments. Thus, this was a clear and convincing reason to find Plaintiff less than fully credible.

Third, the ALJ's determination that the objective evidence is inconsistent with Plaintiff's testimony regarding the severity and extent of her limitations is supported by substantial evidence. The ALJ thoroughly discussed Plaintiff's treatment history and the medical evidence of her impairments. [AR 24-27.] After finding that the degree of limitation alleged by Plaintiff was "not entirely consistent with the evidence of record during the period at issue" (AR 24), the ALJ gave specific examples on inconsistency. [AR 24-27.] For instance, the ALJ noted that Plaintiff reported in her seizure questionnaire that she suffered from "one to seizures per year," yet the record suggested that she had not "suffered from any actual seizure episodes since 2008"—years before the onset period. [AR 24, 26.] Further, the ALJ found Plaintiff's testimony that she "could generally walk as long as necessary, but experienced pain when standing or walking for more than thirty minutes at a time" inconsistent with examination findings that showed she consistently had a normal gait, balance, and coordination, [E.g., AR 1463, 1466, 1470, 1486, 1510, 1518, 1526, 1563, 1572, 1597, 1609.] Additionally, the ALJ found Plaintiff's testimony that she could lift no more than a single bag of groceries inconsistent with examination findings that showed she consistently had full (5/5) motor strength in all extremities. [AR 27, 486, 1502, 1510, 1526, 1534, 1563, 1572, 1614, 1656, 1797, 1877.]; *see Stout v. Berryhill*, 696 F. App'x 838, 839 (9th Cir. 2017) (unpublished) ("Additional substantial evidence, including notes stating that [claimant] had a limited range of motion but normal gait, reflexes, and strength, further supports the ALJ's finding that the treatment notes in the record were inconsistent with the claimant's testimony").

The ALJ was permitted to consider the lack of supporting medical evidence

as a factor confirming her other reasons to reject Plaintiff's credibility. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); Social Security Ruling 96-7p (same). Accordingly, there is substantial evidence in the record for the ALJ's conclusion that the objective medical evidence does not support Plaintiff's symptom testimony.

Finally, the ALJ found that Plaintiff's pain was "adequately controlled through conservative treatment." [AR 26.] Specifically, the ALJ pointed to a statement from Plaintiff's treating physician indicating that Plaintiff was "doing well" with only conservative treatment. [AR 25, 1429, 1431.] In general, an ALJ may properly discount a claimant's subjective symptom allegations because of the conservative nature of his or her treatment. *See Tommasetti*, 533 F.3d at 1039 (*citing Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment").

Here, although the record contained notations that Plaintiff received "conservative treatment," the record also demonstrates that Plaintiff underwent gastric bypass and a lap-band revision surgery, and in 2018 Plaintiff received a lumbar epidural injection. [AR 46-47, 2073.] In 2019, Plaintiff again reported receiving some benefits from epidural injection, but she was also noted as controlling her pain with Tylenol # 4 which is considered a narcotic pain medication.[3] [AR68, 2075.] Further, at the hearing, Plaintiff testified that she received injections in her hands. [AR 68.] Given the totality of this treatment evidence, the Court is not convinced that Plaintiff's treatment could properly be

---

[3] Tylenol #4 has Codeine and is considered a narcotic medication. See Tylenol with Codeine #4, https://www.drugs.com/mtm/tylenol-with-codeine-4.html.

characterized as conservative.

In general, the Ninth Circuit has viewed the use of narcotic pain medication as non-conservative treatment, particularly when in conjunction with other treatments that were also not conservative. *See, e.g. Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (holding treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative). While it appears that Plaintiff only occasionally used narcotic medication for pain, she also occasionally received epidural injections, and she underwent surgery for obesity which the ALJ found to be a severe impairment. In the aggregate, Plaintiff's use of prescribed narcotics coupled with epidural injections and surgical interventions cannot fairly be described as "conservative" treatment. Thus, this was not a clear and convincing reason to find Plaintiff less than fully credible.

In sum, the ALJ articulated three reasons that were clear and convincing in order to find that Plaintiff's subject symptom allegations were less than fully credible. To the extent that the ALJ provided another reason, based on the conservative nature of Plaintiff's treatment, which was legally insufficient, the error was harmless. *See Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162 (9th Cir. 2008), (holding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons that were valid). Thus, this issue does not warrant reversal of the ALJ's decision.

2. **The ALJ's Rejection of the Third Party Statement is Legally Supported**

In her second issue, Plaintiff argues that the ALJ erred by failing to give reasons for rejecting the testimony of her spouse. Plaintiff's husband completed a Third-Party function report provided by the Social Security Administration. [AR 1314-1321.] He described Plaintiff as having limited range of motion in her neck and shoulders and arms. [AR 1314.] He noted that Plaintiff attends to her personal care, she performs light housework, some shopping, some meal preparation, and she

1    drives to care for her mother approximately 4 times a week. [AR 1315.] When
2    Plaintiff takes care of her mother, she does the food shopping and meal preparation.
3    [AR 1315.] Plaintiff's sleep is affected by chronic discomfort and he also described
4    that Plaintiff has difficulty brushing her hair and bending to tie her shoes. [AR.
5    1315.]
6         In determining whether a claimant is disabled, an ALJ is required to consider
7    lay witness testimony concerning a claimant's ability to work. *Stout*, 454 F.3d at
8    1053. Historically, the Ninth Circuit required an ALJ to give germane reasons for
9    discounting lay witness statements. *Molina*, 674 F.3d at 1111. However, recently
10   enacted revisions to the Social Security regulations state that for cases filed after
11   March 27, 2017, the ALJ need not articulate its consideration of such evidence in
12   the way it articulates consideration of medical sources. 20 C.F.R. § 404.1520c(d).
13   "Consequently, there is an argument that the ALJ is no longer required to provide
14   'arguably germane reasons' for disregarding such statements, as the Ninth Circuit
15   has traditionally required." *Pamela M. v. Kijakazi* , No. 20-cv-05479-TSH, 2021
16   U.S. Dist. LEXIS 187319, 2021 WL 4461546, at *11 (N.D. Cal. Sep. 29, 2021)
17   (noting that under amended regulations ALJs are "not required to articulate how
18   [they] considered evidence from nonmedical sources"); *Singh v. Comm'r of Soc.
19   Sec.*, No. 2:20-cv-01467 AC, 2021 U.S. Dist. LEXIS 170491, 2021 WL 4078021, at
20   *7 (E.D. Cal. Sep. 7, 2021) (under new regulations, there is an argument that the
21   ALJ is no longer required to provide reasons germane to lay witnesses to reject their
22   testimony); *Caleb H. v. Saul*, 2020 U.S. Dist. LEXIS 243198, 2020 WL 7680556, at
23   *8 (E.D. Wash. Nov. 18, 2020) (stating that there is an argument that "the ALJ is no
24   longer required to provide reasons germane to lay witnesses to reject their
25   testimony" but not deciding the issue). However, at least one court has found that
26   "[a]lthough § 404.1520c(d) states the Commissioner is 'not required to articulate
27   how we consider evidence from nonmedical sources' using the same criteria for
28   medical sources, it does not eliminate the need for the ALJ to articulate his

1    consideration of lay-witness statements and his reasons for discounting those
2    statements." *Joseph M. R. v. Comm'r of Soc. Sec.*, No. 3:18-CV-01779-BR, 2019
3    U.S. Dist. LEXIS 153831, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019); see
4    also S.*F. v. Kijakazi*, No. 8:20-cv-01810-SHK, 2021 U.S. Dist. LEXIS 241589
5    (C.D. Cal. Dec. 16, 2021).

6        The question of how the 2017 rule change impacts the ALJ's obligations with
7    respect to addressing lay witness testimony is unanswered in the current caselaw.
8    Plaintiff does not address the rule change and seems to assume the pre-2017
9    regulation case law applies unaltered. Defendant takes the position that the ALJ was
10   not required to provide any reasons at all for discounting Plaintiff's husband's
11   testimony under the new regulations. [Def's Br. at 12.] Defendant reasons that "the
12   revised regulations…do not place an articulation burden with respect to lay witness
13   testimony in all cases." [Def's Br. at 13.]

14       While acknowledging that the state of the law is somewhat unsettled, the
15   Court concludes that in this case the issue of the 2017 rule change need not be
16   reached because even under the old and more restrictive standard, the ALJ did not
17   err or, if she did, the error was harmless. This is true because the function report
18   submitted by Plaintiff's spouse does not materially differ from Plaintiff's own
19   subjective testimony, and therefore the rationale applied to discounting her
20   testimony could equally be applied to the lay witness testimony. *Molina*, 674 F.3d
21   at 1117 (applying harmless error to ALJ's lack of articulation related to lay witness
22   statements); *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ's valid
23   reasons for rejecting claimant's testimony applied similarly to lay testimony).
24   Accordingly, there is no error, or harmless error at most, and there is no basis for
25   remand.

26   **3.**    **Constitutional Challenge**

27       Finally, in a "Notice of New Authority," filed after Defendant's Opposition
28   brief, Plaintiff suggests that the decisions of the United States Supreme Court in

1  *Collins v. Yellen*, 141 S.Ct. 1761, 1783-84, 210 L. Ed. 2d 432 (2021) and *Seila Law
2  LLC v. CFPB*, 140 S. Ct. 2183, 2192, 207 L. Ed. 2d 494 (2020), as well as an
3  opinion issued by the White House's Office of Legal Counsel ("OLC"), cast doubt
4  on the constitutionality of the statute under which Andrew Saul (who was
5  Commissioner of Social Security when the Appeals Council denied his request for
6  review) was appointed.
7      Numerous courts presented with this challenge have deemed it to be without
8  merit or concluded that the claimant lacked standing.  *See Collins*, 141 S. Ct. at
9  1802 (Kagan, J., concurring in part) (expressing doubt that the decision would
10 require "the mass of SSA decisions . . . to be undone"); *see, e.g., Standifird v.
11 Kijakazi*, No. 20CV1630-GPC(BLM), 2021 WL 5634177 (S.D. Cal. Dec. 1, 2021);
12 *Brinkman v. Kijakazi*, No. 2:21-cv-00528-EJY, 2021 U.S. Dist. LEXIS 186705, at
13 *6-7 (D. Nev. Sep. 29, 2021) ("Because Plaintiff offers nothing that traces the
14 decision by the ALJ in her case to any alleged injurious conduct by the SSA
15 Commissioner, she has not demonstrated traceability and her constitutional violation
16 claim fails for lack of standing."); *Hester v. Comm'r of Soc. Sec.*, No. C21-0228-
17 SKV, 2021 U.S. Dist. LEXIS 189112, at *5-6 (W.D. Wash. Sep. 30, 2021); *Robles
18 v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 180304, 2021 WL 4285170, at *4
19 n.6 (E.D. Cal. Sept. 21, 2021).  Thus, remand on this issue is unwarranted.

## V.  CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: January 24, 2022

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

14